IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MELISSA ANN POKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 1:10CV768-CSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction.**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq. and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final

decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).[2] Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[3] the Commissioner employs a five step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

1179, 1180 (11th Cir. 1986). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** The plaintiff was 33 years old at the time of the hearing before the ALJ and has a 11th grade education. The plaintiff's prior work experience includes work as a forklift operator, spray painter and fast food worker. Following the administrative hearing, the ALJ concluded that the plaintiff has impairments of discoid lupus, borderline intellectual functioning, personality disorder and depression. Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff has the residual functional capacity to perform sedentary work with restrictions.

**B. The Plaintiff's Claims.** As stated by the plaintiff, her claims are

1.   The Commissioner's decision should be reversed because the ALJ's

> residual functional capacity determination regarding Ms. Poke's physical capacity lacks the support of substantial evidence, as the record is devoid of any physical residual functional capacity assessment completed by any physician.

2. The Commissioner's decision should be reversed because the ALJ neglected his duty to develop a full and fair record as required.

3. The Commissioner's decision should be reversed because the ALJ failed to properly identify, consider, or discuss all of Ms. Poke's severe impairments.

## IV. Discussion

**A. Residual Functional Capacity Assessment.** The ALJ concluded that the plaintiff has the residual functional capacity

> to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except the claimant can lift, carry, and push/pull ten pounds, stand and walk two hours in an eight-hour day, and sit six hours in an eight-hour day. The claimant can understand, remember, and carry out very short, simple instructions and attend for periods of two hours, but contact with the general public and changes in the work setting should be minimal.

(R. at 22)

"Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)." *Peeler v. Astrue,* 400 Fed.Appx. 492, 494 n.2 (11th Cir. 2010). The plaintiff contends that the record must contain a residual functional capacity

determination by a physician. However, the plaintiff's argument conflates the nature of residual functional capacity with the responsibility for making the residual functional capacity determination. The Commissioner's regulations clearly show who is responsible for making the residual functional capacity determination when a case has reached the administrative law judge hearing.

> If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.

20 CFR § 404.1546.

But that observation does not end the enquiry. The essential question raised by the plaintiff is whether it is necessary to have a residual functional capacity assessment by a medical provider as part of the evidence which an ALJ must consider in reaching a determination. In this case, the answer is no. First, the ALJ stated that he

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

§§ 404.1529 and 416.929[5] and SSRs 96-4p[6] and 96-7p.[7] The Administrative Law Judge has also considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927[8] and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.[9]

(R. at 22)

Furthermore, the ALJ considered the opinion of the State Agency psychologist, noting that the opinion was "consistent with medical evidence as a whole." (R. at 20-21) *See Edwards v. Sullivan,* 937 F.2d 580, 584-85 (11th Cir.1991) (ALJ did not err in relying on the opinion of a nonexamining physician where the physician's opinion was consistent with the opinions of examining physicians). Thereafter, the ALJ reviewed and considered the other medical evidence including the records of Dr. Tamburin, the plaintiff's treating dermatologist (R. at 367-77) and the psychological consultant's examination. (R. at 384-86) In short, there was sufficient medical evidence upon which the ALJ

---

[5]These regulations explain how the Commissioner evaluate symptoms, including pain.

[6]This Ruling clarifies the policy of the Social Security Administration on the evaluation of symptoms in the adjudication of claims for disability benefits under title II and title XVI of the Social Security Act.

[7]This Ruling clarifies when the evaluation of symptoms, including pain, requires a finding about the credibility of an individual and explains the factors to be considered in assessing the credibility of the individual's statements about symptoms.

[8]These regulations describe how the Commissioner evaluates opinion evidence.

[9]Generally, these Rulings describe how the Commissioner evaluates and uses medical source opinions.

could make a reasoned decision, and he stated with particularity the weight he gave to the evidence and his reasons for considering it. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam) (ALJ must state with particularity the weight given to different medical opinions and the reasons therefor). The court concludes there was sufficient medical evidence before the ALJ from which he properly could made a residual functional capacity assessment.

**B. Full and Fair Record.** The plaintiff argues that the duty to develop a full and fair record was neglected in several ways in the instant case. First, Poke argues that fairness required that the ALJ order a consultative examination or obtain a medical source opinion from one of Poke's treating physician's in order to properly develop the record regarding Poke's residual functional capacity. "In light of the limited amount of medical evidence regarding her condition, a CE or medical source opinion was necessary." (Pl. Br. at 6)

These arguments improperly shift to the Commissioner the burden of establishing the evidentiary basis from which Poke's residual functional capacity may be determined. In the fourth step of the sequential analysis, the ALJ determines the claimant's RFC and her ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir.2004). While the ALJ has the responsibility to make a determination of plaintiff's RFC, it is plaintiff who bears

the burden of proving her RFC, i.e., she must establish through evidence that her impairments result in functional limitations and that she was "disabled" under the Social Security Act. See 20 C.F.R. § 404.1512 (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"). *See also Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir.2001) (it is claimant's burden to prove RFC, and ALJ's responsibility to determine RFC based on medical records, observations of treating physicians and others, and claimant's description of limitations).  The ALJ was not required to secure a medical source opinion about Poke's residual functional capacity.

The plaintiff relies on several opinions of other district courts for the proposition that the Commissioner's fifth-step burden must be supported by a residual functional capacity assessment of a physician.  Respectfully, the court disagrees to the extent that these cases suggest that the fourth-step residual functional capacity determination must be based on a medical source evaluation.  It appears that the cases which seem to so hold conflate the fourth and fifth step of the sequential analysis with respect to who has the burden of developing the evidence necessary to determine residual functional capacity.  For the same

reasons, the ALJ was not under a duty to order a consultative examination concerning Poke's physical capacity.[10]

The ALJ had before him sufficient medical and psychological evidence from which he could make a reasoned determination of Poke's residual functional capacity. He was not required to secure from a medical source a residual functional capacity assessment.

**C. All of Poke's Impairments.** The plaintiff argues that a consultant or medical source opinion was required for the ALJ to properly evaluate her stab wound and "subsequent chest pain." (Pl. Br. at 8) Poke was stabbed in the chest in 2007, which caused a "subtle left sided pneumothorax . . ." (R. at 303) She was admitted to the hospital on April 14, 2007. (R. at 283) Poke supports her argument in this way:

> [P]rogress notes from Dr. Barry Taylor's office dated April 16, 2008, state that Ms. Poke had "been having chest pain where she was stabbed last [year]" (Tr. 379). On that date, Dr. Taylor noted that she was to continue taking Acetaminophen 650 mg two to three times daily, and he added a prescription for Ultram 50 mg, to be taken three times daily, for pain control (Tr. 378). Considering this information, the ALJ should have concluded that further development was

---

[10] *Nation v. Barnhard*, 153 F.Appx 597 (11th Cir. 2005), does not hold that an ALJ must secure an residual functional capacity assessment from a medical source. Nation argued that the ALJ did not fully and fairly develop the record because one of his physicians did not complete an assessment. The court held that the record contained sufficient other evidence from which the ALJ could reach his conclusion. *Nation* does not stand for the proposition that an ALJ must always secure an residual functional capacity evaluation from a medical source.

>necessary to determine the severity of the stab wound and what limitations, if any, arose there-from.

Pl. Br. at 9.

This argument misrepresents the record. Poke did indeed complain about chest pain, but these complaints were made to a nurse on April 16, 2008. The physician's notes do not mention chest pain, and his assessment of her on April 16 was hypertensive, allergic rhinitis, headaches and insomnia. (R. at 378) No mention was made by hime of chest pain or other problems related to Poke's stab wound. Thus, the record does not support Poke's argument that the pain medications were given to her for chest pain. An administrative law judge is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir.1988). Here the record does not support Poke's contention that more information was needed.

Poke next contends that the ALJ failed to consider the side effects of her medications. There is no need to dwell on this claim. Poke's physicians discussed with her the side effects of the drugs, but other than some stomach problems (R. at 367) there is no evidence that Poke experienced any side effects which might impair her ability to work.

Finally, Poke alleges that the ALJ erred because he failed to consider her status post stab wound as a severe impairment.  Only slight, trivial impairments that "would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience" are not severe. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir.1986).  As noted above, Poke's comment about chest pain was made to a nurse, and the doctor's notes do not mention that pain. (R. at 378)  Those notes plainly do not show the pain medication was prescribed for chest pain because the doctor does not mention that pain in his notes. *Id.*  Poke has failed to fulfill her burden to demonstrate that her status post stab wound had any impact on her ability to work.

**D.  The Question of Poverty.**  In his opinion, the ALJ premised in part his conclusion that Poke was not disabled on her failure to comply with her doctors' orders or consistently seek treatment. (R. at 23).  After the court initially reviewed this case, the court entered an order requiring the parties to file supplemental briefs on the issue of whether the ALJ erred in failing to consider Poke's poverty as a legitimate reason for these failures.  In *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988), the court held that while a remediable or controllable medical condition is generally not disabling, when a claimant is unable to afford prescribed treatment and has no way to obtain it, a condition that is disabling in fact is also

12

legally disabling. After a careful review of the record, the court concludes that the question of Poke's poverty has no bearing on this case. Even though neither party so informed the court, a close review of the record shows that Dawkins is a Medicaid recipient. On a Social Security Administration form asking about physicians who have treated her, Poke states that "Medicaid informed me that I was assigned to Dr. Taylor in August and the earliest he can see me is 112007 . . ." (R. at 208) On February 2, 2008, Poke was admitted to the hospital for outpatient surgery. The admission form shows that her Medicaid card was scanned at the time of her admission. (R. at 323) Thus, Poke had the ability to secure treatment, and her poverty does not excuse her failures to seek it.

## V. Conclusion

For the foregoing reasons, the court concludes that the decision of the Commissioner is due to be affirmed. A separate final judgment will be entered.

Done this 23rd day of January, 2012.

                                              /s/Charles S. Coody
                                              CHARLES S. COODY
                                              UNITED STATES MAGISTRATE JUDGE